IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01052-REB-MJW

JOE DOUGLAS,

Plaintiff,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT LODGE 141, a/k/a IAMAW ROCKY MOUNTAIN AIRCRAFT LODGE,

Defendant.

---

**RECOMMENDATION ON**
**DEFENDANT'S MOTION TO DISMISS (Docket No. 21)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to United States Magistrate Judge issued by District Judge Robert E. Blackburn on July 15, 2008. (Docket No. 9).

Now before the court for a report and recommendation is the defendant's motion to dismiss. (Docket No. 21). Plaintiff filed a response (Docket No. 28), defendant filed a reply (Docket No. 30), and plaintiff filed a "follow-up response" (Docket No. 31). The court has given due consideration to these motion papers, the court's file, and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions, and recommendation that the motion to dismiss be granted.

**Plaintiff's Allegations**

The operative pleading is the pro se plaintiff's Amended Title VII Complaint (Docket No. 5) in which he names his Union, International Association of Machinists & Aerospace Workers District Lodge 141, as the sole defendant.[1] His former employer, United Airlines, is not named as a defendant. Plaintiff's allegations in his amended pleading include the following. He was discriminated against by the Union because the Union failed in its duty to represent him fairly because of his race and color. (Docket No. 5 at 2). Plaintiff attended a third-step decision grievance hearing on April 26, 2007, for violating a return to work agreement.

That agreement, entitled "**AGREEMENT FOR REHABILITATION AND CONTINUED EMPLOYMENT**" [hereinafter "the Agreement"] is attached to the pleading as Exhibit 2. (Docket No. 5 at 8-11). It is dated July 29, 2004, and includes the following. On June 13, 2004, plaintiff was selected to be tested for alcohol pursuant to United's Alcohol Misuse Prevention Program, and the analysis of plaintiff's sample tested positive for alcohol. Pursuant to United's Alcohol Misuse Prevention Policy, plaintiff was thus subject to immediate discharge from employment, but United was willing to forego immediate termination on the condition that plaintiff sign the Agreement, enroll in an approved alcohol rehabilitation program prescribed by United's Medical Review Officer/Substance Abuse Professional, and comply with all of the

---

[1]Plaintiff states on his pleading that the union is also known as IAMAW Rocky Mountain Aircraft Lodge 1886, but defendants state in a footnote in their motion that it is not "'also known as' IAM Local Lodge 1886', which is a separate IAMAW-affiliated entity, which to the knowledge of counsel has not been served with process." (Docket No. 21-1 at 2).

requirements of the Agreement to the company's satisfaction. In addition, prior to return to duty, plaintiff would "be **retested to screen for the presence of drugs** and alcohol, and the results of that test must be negative." (Docket No. 5 at 9) (emphasis added). Furthermore, plaintiff agreed that he would "abstain from the prohibited use of alcohol or other alcohol-related conduct as set forth in United's Alcohol Misuse Prevention Policy and the Federal Regulations and further from the use of medically unauthorized drugs **or illegal substances**, as determined by United Medical." (Docket No. 9) (emphasis added). He further agreed to "undergo and fully cooperate with any required alcohol tests, on an unannounced basis, during the next five years of active service as requested by United Airlines to ensure that you remain alcohol-free immediately before, during and after performing your safety sensitive duties" and "to **undergo and fully cooperate with any required drug tests, on an unannounced basis, at any time (including days off) during the next five years of active service as requested by United to ensure that you remain drug-free**." (Docket No. 5 at 10) (emphasis added). The Agreement included the warning in bold and underscored:

> If you fail to comply with any of the above conditions, including failure to report for or submit to a drug or alcohol test, or in the event a tests reveals **unlawful or unauthorized drug or prohibited alcohol use**, adulteration or substitution, as determined by United Medical, you understand that **you will be discharged from United Airlines and no mitigating factors will be considered**. **There will be no additional opportunity for reinstatement or for continued employment with United Airlines**. Further, under the Federal regulation, a second positive alcohol test of .04 or above will permanently bar you from performing the same safety sensitive function for any other employer.

(Docket No. 5 at 10) (emphasis added). On August 2, 2004, plaintiff signed a statement at the end of the Agreement stating, "I accept all of the terms and conditions of the

above Agreement for Rehabilitation and Continued Employment and agree to comply with all of my obligations as stated above. I acknowledge that I fully understand all of such terms and conditions and that I have had ample opportunity to review them." (Docket No. 5 at 12).

Plaintiff was terminated from United Airlines on January 26, 2007. The termination was upheld in a written decision on May 16, 2007, following the grievance hearing held on April 26, 2007. That decision is attached to the Amended Title VII Complaint as Exhibit 3 (Docket No. 5 at 13-15) and notes the following. Plaintiff was hired by United on October 23, 2000. On August 2, 2004, plaintiff entered into the five-year Agreement. On November 28, 2006, plaintiff failed a random drug test, which resulted in a company investigation and plaintiff's separation on January 26, 2007. During the hearing, the hearing officer noted that the Agreement was a document which, if violated, results in discharge with no mitigating factors considered, nor any additional opportunity for reinstatement. Nevertheless, the hearing officer was asked to hear the case following an agreement by the company and union representatives because of extenuating circumstances, but the hearing officer noted that the "hearing would be unique to this case only, as it fell outside of the stipulations laid out in the Agreement . . . ." (Docket No. 5 at 13). The hearing officer's decision was as follows:

> This is a very poignant situation, and it is noted it took great courage to bring [plaintiff's claimed history of sexual abuse as a child] to light. However, the facts of this case show the Company, Union and the grievant entered into a one-time, five-year rehabilitative *Agreement* in 2004, in which the grievant would receive rehabilitative treatment for substance abuse (which he successfully completed), thus retaining his active employment status with United Airlines, provided he met all other terms of the *Agreement* during that 5 year period. Those terms included, in part, random unannounced tests for alcohol and drug misuse. The

> grievant was given clear direction to review the *Agreement* and seek any clarification needed before signing it.
>
> As noted in the *Agreement*, failure to comply with any of its conditions would result in discharge with no mitigating factors being considered. Although the Company and Union agreed to hold this hearing in order for the grievant to bring this new revelation to light, in the final analysis, it does not supersede the conditions set forth in the *Agreement*. The grievant was appropriately separated from United's employ by violation of the *Agreement* as a result of failing a random drug test. While I have great compassion for what Mr. Douglas is dealing with, and wish him well moving forward, I believe the Company acted appropriately per the terms of the *Agreement*. Accordingly, this grievance is denied.

(Docket No. 5 at 15).

Subsequently, in a letter dated June 6, 2007, plaintiff was advised by Miriam Seewald, the Union's Assistant General Chairperson, that "[a]fter careful review of this case, and after discussions with other IAM representatives, I have concluded that further appeal of this grievance would not be successful nor warranted." (Pl.'s Ex. 4, Docket No. 5 at 16).

According to plaintiff, "[t]here are other white union members who violated the same return to work agreement who were returned to active service. These which were returned are similarly situated in positions to me." (Docket No. 5 at 3, ¶ 12). In addition, he believes that he has "been discriminated against due to [his] race, black, in violation of Title VII of the Civil Rights Act of 1964 as amended." (Docket No. 5 at 3, ¶ 14). Furthermore, he contends that the "[t]he defense that was put forth by the union was inadequate," that "since the union is the sole negotiator for union members, in essence, the attorney; there is an allegation of negligence," that he was treated unequally, that "[t]he union has acted in an arbitrary manner and is being accused of failing in their duty to fairly represent the plaintiff," and that "[t]he duty to fairly represent is one of the

evidential markers to prove racial discrimination." (Docket No. 5 at 4). Plaintiff's request for relief includes compensatory and punitive damages, back pay, reimbursement of health insurance premiums, lost retirement benefits, reinstatement as a customer service representative with no loss of seniority, payment for therapy, and an order prohibiting retaliation. (Docket No. 5 at 6).

**Defendant's Motion to Dismiss**

Defendant now seeks dismissal of the Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in

order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Title VII makes it unlawful for a labor union to discriminate against its members on the basis of race. See Perez v. United Air Lines, Inc., 362 F. Supp.2d 1230, 1240 (D. Colo.), aff'd, 154 Fed.Appx. 711 (10th Cir. 2005). "The analysis of discrimination claims against a union follows the familiar pattern of the *McDonnell Douglas* case. . . . If a plaintiff establishes a prima facie case of discrimination under *McDonnell Douglas*, the union must then rebut the presumption of discrimination by showing a nondiscriminatory reason for its actions." Id. (citations omitted). Furthermore, "[t]o establish a prima facie Title VII claim against a union for a breach of its duty of fair representation, a plaintiff

must show that (1) the employer violated the collective bargaining agreement with respect to the plaintiff, (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation, and (3) there was some indication that the union's actions were motivated by discriminatory animus." Id. (quoting York v. AT & T Co., 95 F.3d 948, 955-56 (10th Cir. 1996)). A union, however,

> is not compelled . . . under Title VII to pursue an individual member's grievance if the union reasonably disagrees with the basis for that grievance. A union's statutory duty of fair representation does not oblige it to take action on every grievance brought by every member. . . . Indeed, if a union could be compelled to take official action on every grievance, irrespective of merit, the union would quickly deplete its resources and credibility; and the arbitration machinery would eventually become overburdened. . . .

Id. at 1241 (quoting York, 95 F.3d at 956).

Here, this finds that defendant correctly asserts that in his Amended Complaint, the plaintiff has not alleged the first two required elements, stated above, to establish Title VII liability. Furthermore, plaintiff has utterly failed to allege in his Amended Complaint the third element, namely, that there was some indication that the Union's actions were motivated by discriminatory animus. Defendant correctly asserts that "[s]ignificantly, while [plaintiff] claims that other white employees who violated their return to work agreements were reinstated (by United), he does not state that the Union engaged in any discriminatory act relating to those employees, or that any of them were accorded more favorable treatment in the grievance process by the Union. That is, [plaintiff] does not assert that the Union arbitrated any other employee's violation of a 'last chance' or 'return to work' agreement." (Docket No. 21-2 at 4). Furthermore, as asserted by defendant,

"Plaintiff has not alleged facts that would suggest that the Union acted discriminatorily or in bad faith, and since the failure to arbitrate even a meritorious grievance is not sufficient to state a claim that defendant violated its [duty of fair representation], this motion should be granted." (Docket No. 21-2).

Simply put, even accepting plaintiff's factual allegations in the Amended Complaint as true and resolving all reasonable inferences in plaintiff's favor, the pleading does not plead enough facts to state a claim to relief that is plausible on its face. Therefore, it is recommended that the Amended Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants' Motion to Dismiss (Docket No. 21) be **granted**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411,**

**1412-13 (10th Cir. 1996).**

Date: March 6, 2009
Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge