IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01052-REB-MJW

JOE DOUGLAS,

Plaintiff,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS,
DISTRICT LODGE 141, a/k/a IAMAW ROCKY MOUNTAIN AIRCRAFT LODGE,

Defendant.

---

**RECOMMENDATION ON
PLAINTIFF'S MOTION FOR LEAVE TO FILE
SECOND AMENDED TITLE VII COMPLAINT (Docket No. 49)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to United States Magistrate Judge issued by District Judge Robert E. Blackburn on July 15, 2008. (Docket No. 9).

On March 6, 2009, this court issued a report and recommendation in which it was recommended that the defendant's motion to dismiss (Docket No. 21) be granted. That report and recommendation remains pending.

Now before the court for a report and recommendation is the pro se plaintiff's motion for leave to file Second Amended Title VII Complaint and memorandum in support thereof. (Docket Nos. 49 and 50). Defendant filed a response. (Docket No. 57). The court has given due consideration to these motion papers, the court's file, and

2

applicable Federal Rules of Civil Procedure and case law.  The court now being fully

informed makes the following findings, conclusions, and recommendation that the

motion for leave to amend be denied as futile.

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court

should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).

"Refusing leave to amend is generally only justified upon a showing of undue delay,

undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure

deficiencies by amendments previously allowed, or futility of amendment."  Frank v.

U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993) (citations omitted).  In the instant

case, this court agrees with the defendant that the plaintiff's motion should be denied on

the ground of futility.

**Plaintiff's Amended Title VII Complaint**

As noted in this court's previous report and recommendation, the operative

pleading is the pro se plaintiff's Amended Title VII Complaint (Docket No. 5) in which he

names his Union, International Association of Machinists & Aerospace Workers District

Lodge 141, as the sole defendant.[1]  His former employer, United Airlines, is not named

as a defendant.  Plaintiff's allegations in his amended pleading include the following.  He

was discriminated against by the Union because the Union failed in its duty to represent

him fairly because of his race and color.  (Docket No. 5 at 2).  Plaintiff attended a third-

---

[1]Plaintiff states on his pleading that the union is also known as IAMAW Rocky
Mountain Aircraft Lodge 1886, but defendants state in a footnote in their motion that it is
not "'also known as' IAM Local Lodge 1886', which is a separate IAMAW-affiliated
entity, which to the knowledge of counsel has not been served with process."  (Docket
No. 21-1 at 2).

3

step decision grievance hearing on April 26, 2007, for violating a return to work

agreement.

That agreement, entitled "**AGREEMENT FOR REHABILITATION AND**

**CONTINUED EMPLOYMENT**" [hereinafter "the Agreement"] is attached to the pleading

as Exhibit 2.  (Docket No. 5 at 8-11).  It is dated July 29, 2004, and includes the

following.  On June 13, 2004, plaintiff was selected to be tested for alcohol pursuant to

United's Alcohol Misuse Prevention Program, and the analysis of plaintiff's sample

tested positive for alcohol.  Pursuant to United's Alcohol Misuse Prevention Policy,

plaintiff was thus subject to immediate discharge from employment, but United was

willing to forego immediate termination on the condition that plaintiff sign the

Agreement, enroll in an approved alcohol rehabilitation program prescribed by United's

Medical Review Officer/Substance Abuse Professional, and comply with all of the

requirements of the Agreement to the company's satisfaction.  In addition, prior to return

to duty, plaintiff would "be **retested to screen for the presence of drugs** and alcohol,

and the results of that test must be negative."  (Docket No. 5 at 9) (emphasis added).

Furthermore, plaintiff agreed that he would "abstain from the prohibited use of alcohol or

other alcohol-related conduct as set forth in United's Alcohol Misuse Prevention Policy

and the Federal Regulations and further from the use of medically unauthorized drugs

**or illegal substances**, as determined by United Medical."  (Docket No. 9) (emphasis

added).  He further agreed to "undergo and fully cooperate with any required alcohol

tests, on an unannounced basis, during the next five years of active service as

requested by United Airlines to ensure that you remain alcohol-free immediately before,

4

during and after performing your safety sensitive duties" and "to **undergo and fully cooperate with any required <u>drug</u> tests, on an unannounced basis, at any time (including days off) during the next five years of active service as requested by United to ensure that you remain <u>drug-free</u>**."  (Docket No. 5 at 10) (emphasis added).

The Agreement included the warning in bold and underscored:

> If you fail to comply with any of the above conditions, including failure to report for or submit to a drug or alcohol test, or in the event a tests reveals **unlawful or unauthorized drug or prohibited alcohol use**, adulteration or substitution, as determined by United Medical, you understand that **you will be discharged from United Airlines and no mitigating factors will be considered**.  **There will be no additional opportunity for reinstatement or for continued employment with United Airlines**.  Further, under the Federal regulation, a second positive alcohol test of .04 or above will permanently bar you from performing the same safety sensitive function for any other employer.

(Docket No. 5 at 10) (emphasis added).  On August 2, 2004, plaintiff signed a statement at the end of the Agreement stating, "I accept all of the terms and conditions of the above Agreement for Rehabilitation and Continued Employment and agree to comply with all of my obligations as stated above.  I acknowledge that I fully understand all of such terms and conditions and that I have had ample opportunity to review them." (Docket No. 5 at 12).

Plaintiff was terminated from United Airlines on January 26, 2007.  The termination was upheld in a written decision on May 16, 2007, following the grievance hearing held on April 26, 2007.  That decision is attached to the Amended Title VII Complaint as Exhibit 3 (Docket No. 5 at 13-15) and notes the following.  Plaintiff was hired by United on October 23, 2000.  On August 2, 2004, plaintiff entered into the five-year Agreement.  On November 28, 2006, plaintiff failed a random drug test, which

5

resulted in a company investigation and plaintiff's separation on January 26, 2007.

During the hearing, the hearing officer noted that the Agreement was a document

which, if violated, results in discharge with no mitigating factors considered, nor any

additional opportunity for reinstatement.  Nevertheless, the hearing officer was asked to

hear the case following an agreement by the company and union representatives

because of extenuating circumstances, but the hearing officer noted that the "hearing

would be unique to this case only, as it fell outside of the stipulations laid out in the

Agreement . . . ."  (Docket No. 5 at 13).  The hearing officer's decision was as follows:

> This is a very poignant situation, and it is noted it took great courage to
> bring [plaintiff's claimed history of sexual abuse as a child] to light.
> However, the facts of this case show the Company, Union and the
> grievant entered into a one-time, five-year rehabilitative *Agreement* in
> 2004, in which the grievant would receive rehabilitative treatment for
> substance abuse (which he successfully completed), thus retaining his
> active employment status with United Airlines, provided he met all other
> terms of the *Agreement* during that 5 year period.  Those terms included,
> in part, random unannounced tests for alcohol and drug misuse.  The
> grievant was given clear direction to review the *Agreement* and seek any
> clarification needed before signing it.
>
> As noted in the *Agreement*, failure to comply with any of its conditions
> would result in discharge with no mitigating factors being considered.
> Although the Company and Union agreed to hold this hearing in order for
> the grievant to bring this new revelation to light, in the final analysis, it
> does not supersede the conditions set forth in the *Agreement*.  The
> grievant was appropriately separated from United's employ by violation of
> the *Agreement* as a result of failing a random drug test.  While I have
> great compassion for what Mr. Douglas is dealing with, and wish him well
> moving forward, I believe the Company acted appropriately per the terms
> of the *Agreement*.  Accordingly, this grievance is denied.

(Docket No. 5 at 15).

Subsequently, in a letter dated June 6, 2007, plaintiff was advised by Miriam

Seewald, the Union's Assistant General Chairperson, that "[a]fter careful review of this

6

case, and after discussions with other IAM representatives, I have concluded that

further appeal of this grievance would not be successful nor warranted."  (Pl.'s Ex. 4,

Docket No. 5 at 16).

According to plaintiff, "[t]here are other white union members who violated the

same return to work agreement who were returned to active service.  These which were

returned are similarly situated in positions to me."  (Docket No. 5 at 3, ¶ 12).  In addition,

he believes that he has "been discriminated against due to [his] race, black, in violation

of Title VII of the Civil Rights Act of 1964 as amended."  (Docket No. 5 at 3, ¶ 14).

Furthermore, he contends that the "[t]he defense that was put forth by the union was

inadequate," that "since the union is the sole negotiator for union members, in essence,

the attorney; there is an allegation of negligence," that he was treated unequally, that

"[t]he union has acted in an arbitrary manner and is being accused of failing in their duty

to fairly represent the plaintiff," and that "[t]he duty to fairly represent is one of the

evidential markers to prove racial discrimination."  (Docket No. 5 at 4).  Plaintiff's

request for relief includes compensatory and punitive damages, back pay,

reimbursement of health insurance premiums, lost retirement benefits, reinstatement as

a customer service representative with no loss of seniority, payment for therapy, and an

order prohibiting retaliation.  (Docket No. 5 at 6).

**Previous Report and Recommendation**

Defendant moved for dismissal of the Amended Complaint with prejudice

pursuant to Fed. R. Civ. P. 12(b)(6).

In this court's previous report and recommendation, the court noted the following.

Title VII makes it unlawful for a labor union to discriminate against its members on the

basis of race.  See Perez v. United Air Lines, Inc., 362 F. Supp.2d 1230, 1240 (D.

Colo.), aff'd, 154 Fed.Appx. 711 (10th Cir. 2005).  "The analysis of discrimination claims

against a union follows the familiar pattern of the *McDonnell Douglas* case. . . .  If a

plaintiff establishes a prima facie case of discrimination under *McDonnell Douglas*, the

union must then rebut the presumption of discrimination by showing a nondiscriminatory

reason for its actions."  Id. (citations omitted).  Furthermore, "[t]o establish a prima facie

Title VII claim against a union for a breach of its duty of fair representation, a plaintiff

must show that (1) the employer violated the collective bargaining agreement with

respect to the plaintiff, (2) the union permitted the violation to go unrepaired, thereby

breaching the union's duty of fair representation, and (3) there was some indication that

the union's actions were motivated by discriminatory animus."  Id. (quoting York v. AT &

T Co., 95 F.3d 948, 955-56 (10th Cir. 1996)).  A union, however,

> is not compelled . . . under Title VII to pursue an individual member's
> grievance if the union reasonably disagrees with the basis for that
> grievance.  A union's statutory duty of fair representation does not oblige it
> to take action on every grievance brought by every member. . . .  Indeed, if
> a union could be compelled to take official action on every grievance,
> irrespective of merit, the union would quickly deplete its resources and
> credibility; and the arbitration machinery would eventually become
> overburdened. . . .

Id. at 1241 (quoting York, 95 F.3d at 956).

This court found that the defendant correctly asserted that in his Amended

Complaint, the plaintiff had not alleged the first two required elements, stated

above, to establish Title VII liability.  Furthermore, plaintiff failed to allege in his

Amended Complaint the third element, namely, that there was some indication that

the Union's actions were motivated by discriminatory animus.  This court found that

8

the defendant correctly asserted that "[s]ignificantly, while [plaintiff] claims that

other white employees who violated their return to work agreements were

reinstated (by United), he does not state that the Union engaged in any

discriminatory act relating to those employees, or that any of them were accorded

more favorable treatment in the grievance process by the Union.  That is, [plaintiff]

does not assert that the Union arbitrated any other employee's violation of a 'last

chance' or 'return to work' agreement."  (Docket No. 21-2 at 4).  Furthermore, as

asserted by defendant, "Plaintiff has not alleged facts that would suggest that the

Union acted discriminatorily or in bad faith, and since the failure to arbitrate even a

meritorious grievance is not sufficient to state a claim that defendant violated its

[duty of fair representation], this motion should be granted."  (Docket No. 21-2).

This court concluded that simply put, even accepting plaintiff's factual

allegations in the Amended Complaint as true and resolving all reasonable inferences in

plaintiff's favor, the pleading did not plead enough facts to state a claim to relief that is

plausible on its face.  Therefore, it was recommended that the Amended Complaint be

dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which

relief can be granted.

**Plaintiff's Proposed Second Amended Complaint**

Plaintiff does not specify in his motion what his proposed amendments to his

Amended Complaint are, but he has tendered a proposed Second Amended Title VII

Complaint.  (Docket No. 49-2).  In that pleading, plaintiff lists the parties, jurisdiction,

and administrative procedures and then states the following:

**NATURE OF THE CASE**

9.  Defendant has discriminated against Plaintiff because of the following:
Race.

10.  Defendant has discriminated against Plaintiff because of the following:
1) Duty to fairly represent.  2) Refusal to hold United Airlines legally
accountable for violating Collective bargaining Agreement Article XVII -
Disciplinary Action Article A.  3) Refusal to take grievance to Step Four -
System Board after Step Three Hearing non-settlement and / or
arbitration.

### FIRST CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

11.  Under Rule 38 Federal Rules of Civil Procedure (a), Plaintiff demands
a jury trial.

12.  Under Rule 38 (b) (1) (2) (c) (d) Fed.R.Civ.P. that all legal rights
remain.  Further under Rule 38 (b) (2) (d), Plaintiff provides no waiver or
withdrawal.

### SECOND CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

13.  Enter an Order for Defendant to follow the Collective Bargaining
Agreement and / or take Grievance Number B162138 - DENCS to
arbitration.

14.  Evidence presented in exhibits in the Original and First Amended
Complaints demonstrate a departure from the established CBA.  This
Collective Bargaining Agreement was in force for the time period relevant.

### REQUEST FOR RELIEF

Plaintiff requests the following relief: In addition to the first and second
claims for relief, Plaintiff seeks any other relief not within the legal purview
of the Plaintiff as this Court deems fit.

(Docket No. 49-2 at 2-3).

Since the plaintiff is without counsel, the tendered Second Amended Complaint

has been construed liberally and held to a less stringent standard than formal

pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.

1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  The court, however,

10

finds that the plaintiff still has not plead "enough facts to state a claim to relief that is plausible on its face." <u>Cutter v. RailAmerica, Inc.</u>, 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).

While the pleading "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp.</u>, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' . . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974).

Plaintiff's tendered amended pleading is conclusory and does not cure the deficiencies noted in this court's previous report and recommendation. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The court thus finds that it would be futile to permit it to be filed.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that plaintiff's motion for leave to file Second Amended

Complaint (Docket No. 49) be **denied**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the**

**parties have ten (10) days after service of this recommendation to serve and file**

**written, specific objections to the above recommendation with the District Judge**

**assigned to the case.  The District Judge need not consider frivolous, conclusive,**

**or general objections.  A party's failure to file and serve such written, specific**

**objections waives _de novo_ review of the recommendation by the District Judge,**

**Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives**

**appellate review of both factual and legal questions.  Makin v. Colorado Dep't of**

**Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411,**

**1412-13 (10th Cir. 1996).**

Date:        August 17, 2009              s/ Michael J. Watanabe
             Denver, Colorado             Michael J. Watanabe
                                          United States Magistrate Judge